**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>
*Southern Division*

|  |  |  |
|---|---|---|
| MATTHEW HIGHTOWER, | * |  |
|  | * | Civil No.:       GJH-19-1719 |
| Petitioner, |  |  |
| v. | * | Criminal No.: GJH-15-0322 |
| UNITED STATES OF AMERICA, | * |  |
| Respondent. | * |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Currently pending before the Court is Petitioner Matthew Hightower's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 547. No hearing is necessary to resolve the Motion. *See* 28 U.S.C. § 2255(b). For the following reasons, Petitioner's Motion is denied.

**I.      BACKGROUND**

On September 22, 2016, a jury convicted Petitioner of Collection of Credit by Extortionate Means, 18 U.S.C. § 894, and Use of Interstate Facilities with Intent to Promote, Manage, Establish, or Carry on Extortion, 18 U.S.C. § 1952. ECF No. 297. By a special verdict form, the jury additionally found that Petitioner had committed murder in furtherance of an extortion plot. *Id.* at 2.[1] On November 30, 2016, the Court sentenced Petitioner to a term of imprisonment of 380 months. ECF No. 358 at 2. The Honorable Judge Marvin J. Garbis presided over the trial and sentencing. *Id.* at 1. On December 1, 2016, Petitioner filed an appeal to the

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

United States Court of Appeals for the Fourth Circuit. ECF No. 360. On March 12, 2018, the appeal was denied. *United States v. Hightower*, 714 F. App'x 268 (4th Cir. 2018) (per curiam).

On June 10, 2019, Petitioner filed a pro se Motion to Vacate, Set Aside, or Correct Sentence. ECF No. 547. On August 14, 2019, Petitioner filed a Memorandum of Law. ECF No. 549. On September 3, 2019, the Government filed a Response opposing the Motion. ECF No. 550. On October 10, 2019, Petitioner filed a Reply to the Government's Response. ECF No. 553. On May 6, 2021, Petitioner filed an Affidavit in Support of 28 U.S.C. § 2255 Petition, Memorandum of Law, and Accompanied Filings.[2] ECF No. 597.

## II.    MOTION UNDER 28 U.S.C. § 2255

### A.  Standard of Review

To be entitled to relief under 28 U.S.C. § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Where, however, a § 2255 petition, along with the files and records of the case, conclusively shows that the petitioner is not entitled to relief, a hearing on the motion is unnecessary and the claims raised therein may be dismissed summarily. *Id.* § 2255(b).

Additionally, as the Petitioner proceeds pro se, this Court must construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[2] Petitioner's Motion to Postpone Ruling, as it relates to this filing, is granted. ECF No. 563.

**B.  Governing Provisions**

Petitioner contends that he is entitled to relief under § 2255 because he received ineffective assistance of counsel. Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish a redressable claim of ineffective assistance of counsel, a petitioner much show (1) that counsel's performance was deficient and (2) prejudice resulted from counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonableness, *id.* at 687–88, such that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Harrington v. Richter*, 562 U.S. 86, 104 (2011); *see also United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004). Those errors are prejudicial when "there is a reasonable probability that, but for the counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts are "highly deferential" to counsel's tactical decisions and petitioners must overcome the strong presumption that the challenged action falls within "the wide range of reasonable professional assistance." *Id.* at 689.

**C.  Discussion**

Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence alleges ineffective assistance of counsel on eight grounds. ECF No. 547; ECF No. 547-1. The Motion requests relief on the basis that Trial Counsel failed to (1) object to alleged prosecutorial misconduct; (2) subpoena evidence pertaining to T-Mobile cell phone records; (3) investigate and correct errors related to Maryland Motor Vehicle Administration records; (4) object to the application of the cross-reference to second-degree murder; (5) object to certain testimony at

sentencing; and (6) provide Petitioner information pertaining to discovery through the signing of a discovery agreement with the prosecutor's office. ECF No. 547-1. The Motion also argues that (7) Appellate Counsel failed to argue that (i) Petitioner's sentence was substantively unreasonable; (ii) the district court erred in denying his motion to dismiss Count Two (use of interstate facilities to extort); and (iii) the district court erred in denying his motion to suppress certain statements. *Id.* Finally, the Motion contends that (8) Counsel's cumulative errors prejudiced the defense. *Id.*

The Court will address each ground, considering together those grounds that present related issues. As noted previously, to succeed on any ground, Petitioner must meet the high bar of the two-part *Strickland* test: that (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. *Strickland*, 466 U.S. at 687.

### 1. Trial Errors

Petitioner raises a host of claims with regards to Counsel's performance at trial, including failures to obtain and use certain evidence and failures to object to the conduct of certain witnesses and the prosecution. As noted previously, a petitioner must overcome a high hurdle to prevail on such claims, and there is a strong presumption that challenged actions fall within "the wide range of reasonable professional assistance." *Id.* at 689. Indeed, in deciding a motion for ineffective assistance of counsel, the Court's job is not to sit as a trial practice professor, quibbling with every aspect of an attorney's performance; instead, the Court is merely to ensure that representation did not fall to the level of being constitutionally deficient. The Court is expected to make "every effort to avoid the distorting effects of hindsight," and to evaluate

performance from "counsel's perspective at the time of the alleged error and in light of all circumstances." *Roane*, 378 F.3d at 410–11 (internal quotations and citations omitted).

In light of these considerations, the Court will turn to Petitioner's allegations. First, Petitioner argues that Counsel failed to subpoena and obtain T-Mobile cell phone records, so that the defense could build its case on the original records, not those supplied by the Government. ECF No. 547-1 at 1. The Government used records from two cell phones tied to Petitioner to chart his relationship with his alleged co-conspirators and the victim and to establish Petitioner's location in the vicinity of the victim's home at the time of the murder. JA at 422–23.[3] Those phones included a primary cell phone and a secondary "burner" cell phone. *Id.* at 423. Petitioner argues that his attorney "did nothing" to obtain the original records after being told by T-Mobile that they had been destroyed after two years. ECF No. 549 at 19. Further, Petitioner asserts that he has since received copies of the records that Counsel failed to obtain for his primary phone. ECF No. 597 at 3. He charges that the records demonstrate that prosecutors "fabricated" evidence against him and "lie[d]" at trial about his extortion of the victim and his involvement in the murder. *Id.* at 3–7.

To start, there appears to be some confusion about which records exactly Counsel was unsuccessful in obtaining, and thus, whether failure to do so constitutes deficient performance. Petitioner's own submitted materials include a copy of a letter from Counsel to the Government, dated August 31, 2016, in which Counsel requests "copies of the exact original data provided to your Office by the phone companies." ECF No. 597-1 at 4. In the letter, Counsel notes that "phone companies hold *the GPS and cell tower data* for cell phone calls for only two years." *Id.*

---

[3] Citations to "JA" refer to the Joint Appendix on appeal in this case, *Hightower*, 16-479, ECF No. 62. Pin cites refer to the page numbers generated by the court's electronic filing system.

(emphasis added).[4] The records Petitioner has submitted, purportedly obtained directly from T-Mobile, contain certain information for his primary phone—so-called call-detail records (CDRs), which include dates and times when phone calls and text messages were sent and received. *See Id.* at 38–90. However, a review of those records indicates they do not contain GPS or cell phone tower location information—information the Government separately obtained from T-Mobile and used to link Petitioner to the crime. JA at 422–23. Thus, it is unclear whether Counsel erred in failing to obtain the original cell phone records in advance of trial, or whether the records he sought—those containing location data—were in fact lost to time.

Yet even assuming without deciding that Counsel was deficient in failing to obtain original records from T-Mobile, the likes of which Petitioner now possesses, Petitioner must show that the error prejudiced the outcome of the trial. The bar for doing so is high: "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111–12 (citing *Strickland*, 466 U.S. at 693). Here, Petitioner appears to show evidence of certain discrepancies between the voluminous cell phone records compiled by the Government and the T-Mobile CDRs for Petitioner's primary cell phone, specifically focusing on the numbers of calls made by the phone and the timing of certain text messages and calls. *See* ECF No. 597 at 3–7. The relevance of these discrepancies is not clear, as the Government purportedly compiled its dataset using a variety of sources, including records from Petitioner's primary phone and his alleged burner phone, but also information obtained from the cell phones and other electronic devices of Petitioner's co-conspirators and the victim in this case, all of whom regularly communicated with each other. JA at 906–18. The Government testified that the collection of

---

[4] Counsel makes a similar statement in trial during a cross-examination: "Q: Do you know that after two years, the phone companies … stop keeping their records? A: Correct. Q: So as of September of 2015, there was no way to get Mr. Hightower's *location* records for the summer of 2013; right? They're gone?" JA at 1156 (emphasis added).

this information involved the use of several different software programs for extracting call information, texts, and other electronic communications, which together resulted in thousands of pages of source documents. *Id.* Relevant portions of those communications were then compiled and summarized into an exhibit for trial. *Id.* at 917. Such a complex process certainly leaves open the possibility of error. However, even assuming without deciding that the discrepancies highlighted by Petitioner represent genuine errors in the Government's dataset, it is unclear what that demonstrates. For instance, a comparison between the information on the chart, which Petitioner identifies as the Government's summary exhibit, and the T-Mobile CDRs provided by Petitioner generally both show frequent exchanges of messages between the same individuals on the same dates with variations in the timestamp of the messages. *Compare* ECF No. 597-1 at 12–13 *with* 597-1 at 77–78 (each showing a series of text messages between Petitioner and the victim on 8/2/2013 but with variations on time). Relevant here, the Government's expert testified that CDRs are *not* consistently provided in Eastern Standard Time because "[s]ome carriers, because the way the communications are transmitted, it'll go through other time zones outside of the Eastern Standard Time zone." JA at 908. The expert confirmed that the Government's summary exhibit included converted, standardized timestamps. *Id.* Further, as a second Government expert explained, "if you see a T-Mobile text message, it's going to be in Pacific time. And the thing [] that's confusing about it is when you look at the [T-Mobile] records, you'll have a bunch of calls that are in Eastern Time and then you'll have the next day and time will show a text message. But what you have to do is convert that time to Pacific Time, and it actually changes the order of things." *Id.* at 1513.  Thus, the supposed discrepancy, without more, does not appear to undercut the government's evidence in such a way that, if included at trial, there would be a reasonable probability of a different result.

Petitioner also contends that the records call into question the cell tower expert's testimony regarding sixteen calls placed on September 21, 2013, because the records only show four such calls. ECF No. 597 at 4. However, Petitioner seems to ignore the fact that the expert associated a second phone with the Petitioner and a review of the testimony indicates that he relied more heavily on activity from that second phone in his testimony. *See* JA 1580–1600. In total, even assuming that counsel was ineffective for failing to acquire these records, Petitioner cannot demonstrate that he suffered any prejudice.

Next, Petitioner argues that Counsel failed to investigate certain MVA records that would have undermined the Government's argument that Petitioner purchased a pickup truck on the day of the shooting and sought to keep the seller's license plates on the vehicle for the night—the implication being he made the request so that he could later obscure his identity when using the truck to commit a crime. JA at 590. Petitioner contends that MVA records would have shown that he "did, in fact, have his own tags and Geico insurance for the truck" on the afternoon in question, thereby undercutting the testimony of several Government witnesses. ECF No. 549 at 9. However, the testimony of the seller only indicated that Petitioner asked to keep her tags on the car and that she declined and had her tags removed, JA at 1265, and the record shows Counsel cross-examined the witness about the prosecution's theory regarding the pickup truck, and attempted to raise doubts about the theory on several occasions, albeit perhaps not exactly in the manner that Petitioner would have preferred. *Id.* at 1269–70; *id.* at 1790–91; *see Michael v. United States*, 168 F. Supp. 2d 518, 523 (D. Md. 2001) ("Petitioner once again fails to show how his fate would have been different had counsel conducted his cross-examination in a different manner"). Moreover, Counsel later introduced the MVA records in question in an Objection to

the Pre-Sentencing Report. ECF No. 336-1. Thus, the Court finds that Counsel was not deficient on this issue.

Relatedly, Petitioner also claims Counsel was ineffective for failing to object to "the prosecutor's repeated instances of misconduct." ECF No. 549 at 15–18. He charges that "the prosecutor knowingly allowed false testimony to go uncorrected," including testimony pertaining to Petitioner's cell phone records and his purchase of the pickup truck, as discussed above. ECF 547-1 at 1; ECF No. 549 at 17–18. To prevail on this claim, Petitioner must first establish that there existed prosecutorial misconduct, and then that Counsel was ineffective for failing to object to the misconduct. *See Wheeler v. United States*, No. 2:11CR36, 2015 WL 3431911, at *5 (E.D. Va. May 27, 2015).

To demonstrate prosecutorial misconduct, Petitioner must show: (1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is reasonable probability that the false testimony could have affected the verdict. *Roane*, 378 F.3d at 400.

However, as noted above, Petitioner has not provided adequate evidence of false testimony that would have affected the verdict in this case, let alone that the Government put on such evidence despite knowing it was false. What's more, although Counsel did not move to strike certain witness statements that Petitioner now deems false, Counsel "did not permit the testimony at issue to go unchallenged." *Wheeler*, 2015 WL 3431911, at *5. Instead, it appears he focused on undercutting the Government's case through substantial cross-examination of the prosecution's key witnesses, *see, e.g.*, JA at 1150–1192; *id.* at 1266–71; *id.* at 1604–1649. As such, Counsel's failure to object in the manner now suggested by Petitioner does not constitute deficient performance.

Petitioner next argues that Counsel failed to object to testimony at sentencing by a detective who spoke about a subsequent shooting allegedly committed by Petitioner. ECF No. 547-1 at 2. However, courts have "long recognized that sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence." *United States v. Powell*, 650 F.3d 388, 392 (4th Cir. 2011) (quoting *Pepper v. United States*, 562 U.S. 476, 480 (2011)). Such inquiry includes "the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 488. Further, to establish prejudice from an attorney's alleged deficiencies at a sentencing proceeding, a petitioner must be able to show that the sentence was unreliable, or that the sentencing proceeding was fundamentally unfair. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Here, according to Petitioner, the testimony "was used for the sole purpose of establishing conduct in conformity therewith the alleged murder … which was impermissible and highly prejudicial." ECF No. 549 at 8. However, while it is true that certain kinds of character evidence may be prohibited during trial, the standards are, as previously noted, much more lenient at sentencing. And although the alleged shooting was not directly related to the pending charges, the prosecution urged the Court to hear the testimony as it pertained to Petitioner's "relevant characteristics." JA at 1979; *see also* ECF No. 340 at 1. As such, the testimony was appropriate. What's more, Judge Garbis ultimately issued a downward departure from the sentencing guidelines in calculating Petitioner's total term of incarceration, suggesting the testimony was not weighted heavily, if at all, in the Court's final analysis. Therefore, Petitioner has not shown that Counsel was ineffective.

Finally, Petitioner contends that Counsel argued for the application of a cross-reference to second-degree murder under § 894, rather than disputing *any* application of the murder cross-

reference as part of his sentencing. ECF 547-1 at 2. The Sentencing Guidelines at issue in Count

One of Petitioner's conviction, § 894, contain a cross-reference that states:

> If a victim was killed under circumstances that would constitute murder under 18 U.S.C.
> § 1111 had such killing taken place within the territorial or maritime jurisdiction of the
> United States, apply § 2A1.1.

U.S.S.G. § 2E1.1(c)(1); *see also* ECF No. 341 at 16. Petitioner appears to argue that the

Government did not prove that he intended to kill the victim, and therefore the Court should not

have applied the murder cross-reference at all. ECF No. 549 at 7. But sentencing occurred *after* a

jury found Petitioner guilty of murder in furtherance of extortion under § 894. ECF No. 297 at 2.

Therefore, as the Government notes in its Opposition, Counsel's argument for a cross-reference

to second-degree murder, as opposed to a cross-reference for first-degree murder, was "an

attempt to get him the minimum sentence possible for the crimes of conviction." ECF No. 550 at

5. In doing so, Counsel argued strenuously—and successfully—for application of a cross-

reference to second-degree murder. *See* JA at 2037; *id.* at 2044–50; ECF No. 349 at 1–5. Thus,

counsel actually mitigated Petitioner's exposure and Petitioner's claim of ineffective assistance

fails.

## 2. Discovery Agreement

Petitioner also asserts that Counsel was ineffective "by signing and stipulating to a

discovery agreement that deprived [Petitioner] of his right to effectively participate in his own

defense." ECF No. 547-1 at 2. He argues that Counsel would not provide "copies of discovery"

which in turn prevented Petitioner from aiding Counsel with information about "errors of fact in

the government's case." *Id.*

Nevertheless, as the Government asserts, the agreement in question appears to be "the

standard agreement utilized by [the] United States Attorney's Office," used to "protect victims

and witnesses from reprisal as discovery can serve as an unintentional roadmap for revenge."
ECF No. 550 at 6. The agreement specifically bars the making of copies of discovery materials
for defendants, although it does permit Counsel to review the contents of discovery with a
defendant. ECF No. 597-1 at 3. Further, acceptance of this agreement is considered a "customary
practice among the defense bar in [Maryland]." *United States v. Smith*, 640 F.3d 580, 583 (4th
Cir. 2011) ("Counsel had accepted the terms of the Government's discovery agreement (a
customary practice among the defense bar in the district), which precluded him from making
copies of the discovery materials for Smith to retain; however, counsel and Smith could review
the materials at the detention facility where Smith was being held."). Petitioner has not suggested
that Counsel refused to discuss the materials of the case with him or that possession of the
discovery materials would have changed the outcome of the case. In fact, after trial and
sentencing, Counsel filed another motion on behalf of Petitioner, requesting copies of the cell
phone records the Government obtained from T-Mobile for Petitioner's keeping. ECF No. 366.
Thus, this claim fails.

### 3.  Cumulative Error

Finally, Petitioner argues that even if Counsel's individual alleged errors do not
constitute ineffective assistance, taken together they do. ECF No. 547-1 at 3. However,
ineffective assistance claims in the Fourth Circuit "must be reviewed individually, rather than
collectively." *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). Further, "legitimate
cumulative-error analysis evaluates only the effect of matters actually determined to be
constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Id.* at
852 n.9; *see also Morris v. United States*, No. 4:13CR25, 2017 WL 1538276, at *10 (E.D. Va.
Apr. 17, 2017), *aff'd*, 917 F.3d 818 (4th Cir. 2019). Thus, because each of the claims reviewed

above fails to demonstrate evidence of ineffective assistance, Petitioner has not shown that Counsel's actions cumulatively prejudiced the outcome of the case.

### 4. Appellate Errors

In addition to his claims against Counsel at trial, Petitioner further argues that Appellate Counsel failed to provide effective assistance. ECF No. 547-1 at 2. In pursuing this claim, Petitioner must meet an even higher bar than he does in showing that trial counsel was ineffective. That is because, in the course of their work, appellate counsel must "select[ ] the most promising issues for review," not present every possible claim. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). As such, while "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, … it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of effective assistance of counsel, a petitioner must show that counsel ignored issues that were "clearly stronger than those presented." *Id.* (internal quotations and citation omitted).

On appeal, Petitioner's Appellate Counsel made two primary arguments: (1) § 894, the Collection of Extensions of Credit by Extortionate Means, is unconstitutional under the Commerce Clause; and (2) the district court lacked jurisdiction under § 1952, Use of Interstate Facilities with Intent to Promote, Manage, Establish, or Carry on Extortion, because there was only an incidental and minimal interstate nexus insufficient to establish a violation of the statute. *Hightower*, 714 F. App'x at 268. As noted previously, the district court's decision was affirmed. *Id.* at 270.

Here, Petitioner argues that the two issues pursued by Appellate Counsel were "throw away issues that were perfunctorily made." ECF No. 549 at 14. Instead, Petitioner contends Appellate Counsel should have put forward three claims: Petitioner's sentence was substantively

unreasonable; the district court erred in denying his motion to dismiss Count Two (use of interstate facilities); and the district court erred in denying his motion to suppress certain statements. *Id.* at 11–14.

However, Petitioner "alleges no specific facts that might demonstrate a deficiency in his counsel's performance." *United States v. Garrett*, No. CR PJM-09-0265, 2017 WL 2629033, at *8 (D. Md. June 16, 2017). Moreover, no reason has been provided showing that any of the three arguments now raised are "clearly stronger" than those selected by Appellate Counsel. Therefore, Petitioner has not met the *Strickland* test as applied to counsel on appeals.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Because the accompanying Order is a final order adverse to the applicant, Petitioner must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Petitioner has not made the requisite showing, and thus, the Court declines to issue a certificate of appealability.

## IV.  CONCLUSION

For the foregoing reasons Petitioner's Motion to Vacate, Set Aside, or Correct a

Sentence, ECF No. 547, is denied. A separate Order follows.

Date: September 12, 2022                                    ___/s_____
                                                            GEORGE J. HAZEL
                                                            United States District Judge